# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATTY A. DUVALL-DUNCAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:14-cv-00017-CCC-GBC<br><br>(JUDGE CONNER)<br><br>(MAGISTRATE JUDGE COHN)<br><br>REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMIESIONER AND REMAND THE CASE TO THE COMISSIONER FOR FURTHER PROCEEDINGS<br><br>Docs. 1, 5, 6, 7, 8, 9 |

## REPORT AND RECOMMENDATION

### I.      Procedural Background

On October 2, 2009, Patty A. Duvall-Duncan ("Plaintiff") filed an application for Title II Social Security Disability benefits, with a date last insured of December 31, 2011,[1] and with an onset date of May 2, 2006.  (Administrative

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last

Transcript (hereinafter, "Tr."), 14, 356-362).   Plaintiff's claim was denied at the

initial level of administrative review.   An administrative law judge (ALJ) held four

administrative hearings on June 2, 2011; November 16, 2011; February 23, 2012;

and May 31, 2012; during which Plaintiff, who was represented by counsel, an

impartial medical expert, and a vocational expert testified (Tr. 35-111, 113-25,

127-39, 141-77).   On June 20, 2012, the ALJ found that Plaintiff was not disabled

and not entitled to benefits.   (Tr. 11-34).   On November 11, 2013, the Appeals

Council denied Plaintiff's request for review, thereby affirming the decision of the

ALJ as the "final decision" of the Commissioner ("Defendant").   (Tr. 1-5).

On January 4, 2014, Plaintiff filed the above-captioned action pursuant to 42

U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the

Commissioner of the Social Security Administration denying social security

benefits.   Doc. 1.   On March 13, 2014, the Defendant filed an answer and an

administrative transcript ("Tr.") of proceedings.   Doc. 5, 6.   On April 25, 2014,

Plaintiff filed a brief in support of the appeal ("Pl. Brief").   Doc. 7.   On May 30,

2014, Defendant filed a brief in response ("Def. Brief").   Doc. 8.   Plaintiff filed a

brief in reply ("Pl. Reply") on June 13, 2014.   Doc. 9.   On November 5, 2014, the

---

date that a claimant meets the requirements of being insured is commonly referred to as the "date
last insured."

Court referred this case to the undersigned Magistrate Judge.

## II. Relevant Facts in the Record

Plaintiff was born on August 17, 1968, and thus was classified by the regulations as a younger person through the date of the ALJ decision on June 20, 2012. (Tr. 358); 20 C.F.R. § 404.1563(c). The highest grade Plaintiff completed in school was the eighth grade followed by obtaining a GED. (Tr. 91). Plaintiff returned to vocational school at around the age of nineteen. (Tr. 91). Plaintiff's past relevant work includes working as a nurse assistant. (Tr. 19, 1131, 1140). On May 2, 2006, Plaintiff was involved in a car accident. (Tr. 487, 493). Plaintiff alleges disability due to a combination of impairments including degenerative disc disease; post-traumatic stress disorder (PTSD); and pain-related depression and anxiety. Pl. Brief at 1; (Tr. 22, 363, 381, 414). The ALJ found the following impairment to be severe: drug dependence. (Tr. 17). The ALJ found that obesity, lumbar disc disease, and cervical disc disease were non-severe. (Tr. 17).

### A. Relevant Treatment History and Medical Opinions

### 1. Mental Health Records

On December 6, 2007, Dr. Razvan Vaida detailed Plaintiff's medical and psychiatric history and symptoms, ultimately diagnosing Plaintiff with PTSD.  (Tr. 654-656).   On May 28, 2009, Erik Sprohge, Ph.D., a consultative psychologist, examined Plaintiff and rendered a diagnosis of PTSD.  (Tr. 662-71).   Dr. Sprohge reported Plaintiff's history, including events and signs that related to PTSD, found her to be a "generally reliable historian," and confirmed a diagnosis of PTSD.  (Tr. 662-666).   On July 15, 2009, Michael Suminski, Ph.D., a state agency psychologist, completed a "Psychiatric Review Technique" and concluded that Plaintiff had a medically determinable impairment of PTSD.  (Tr. 688).

In a consultative examination report dated May 5, 2010, John Tardibuono, D.Ed., reviewed a series of psychiatric progress notes from July 20, 2009, through January 21, 2010, which listed a diagnosis of PTSD and later confirmed a diagnosis of PTSD.  (Tr. 928, 930).   In a letter dated June 24, 2010, Plaintiff's treating psychiatrist, Dr. Vaida detailed that she had been treating Plaintiff for PTSD symptoms since December 06, 2007.  (Tr. 1136).   Dr. Vaida stated that Plaintiff's PTSD symptoms manifested in the form of panic attacks while driving, recurrent distressful thoughts about the accident due to anxiety, and avoiding reminders of her previous car accident.  (Tr. 1136).   Dr. Vaida opined that Plaintiff

appeared to "fall under the category of people with chronic PTSD and she is likely to continue to struggle with PTSD symptoms for years to come." (Tr. 1136).

Plaintiff repeatedly complained of panic attacks, poor sleep, verbal and physical outbursts, mood swings, depression, and anxiety. *See e.g.*, (Tr. 631- 657). For example, in a record dated December 24, 2008, Plaintiff reported experiencing anxiety attacks four times a week and stated that she did not drive as a result of the anxiety. (Tr. 634). In a progress note dated October 10, 2010, Plaintiff's treating psychiatrist opined that Plaintiff's prognosis was poor due to chronic pain which caused depression. (Tr. 637).

Regarding Plaintiff's cognitive limitations, Dr. Vaida observed that Plaintiff had limited abstraction skills and poor short-term memory, detailing that Plaintiff's ability to recall after a few minutes required giving her three hints. (Tr. 656). On May 28, 2009, examining psychologist Dr. Erik Sprohge opined that Plaintiff's abstraction was "fair"; she could perform a simple calculation, but could only name two of the last four presidents; Plaintiff could not do "serial seven subtractions" beyond 100 correctly; and although she could repeat four digits going forward, she could only repeat two digits going backwards, and she interjects a new number when trying to complete the three digits backwards. (Tr. 665-666).

Based on Plaintiff's responses to hypotheticals Dr. Sproghe' concluded that Plaintiff's social judgment was "fair to poor" and that Plaintiff had limited insight into her condition.  (Tr. 665-666).

## 2.  Records Relating to Physical Impairments

In a treatment record dated October 11, 2011, Dr. Triantafyllou noted that Plaintiff had significant difficulty with prolonged standing or walking, and was on chronic pain management.  (Tr. 1056).  In a residual functional capacity ("RFC") assessment dated November 27, 2011 (Tr. 1032-36), Dr. Triantafyllou reported a poor prognosis with respect to Plaintiff's cervical and lumbar disc disease.  (Tr. 1032).  Dr. Triantafyllou noted that Plaintiff had a reduced range of motion in her cervical and lumbar spine, an abnormal gait, tenderness, muscle spasms, muscle weakness, and she experienced impaired sleep.  (Tr. 1033).  Dr. Triantafyllou opined that Plaintiff could stand and/or walk for less than two hours, and sit for about four hours, in an eight-hour workday.  (Tr. 1034).

Treating physician, Dr. Sicilia, treated Plaintiff over an extended period for chronic pain syndrome, cervical and lumbar disc degeneration, and severe depression.  (Tr. 890-900, 903-04, 918, 1016-19, 1030, 1095).  In February 2010,

after nearly two years of consistent treatment, Dr. Sicilia was still reporting that Plaintiff had an antalgic gait, mild to moderate reduced range of motion in her cervical spine, severe decrease in range of motion in all directions of her lumbosacral spine, and low back pain upon straight-leg raising.  (Tr. 918, 1019).  These objective findings, as well as the aforementioned diagnostic impressions, continued throughout the remainder of 2010 and 2011.  (Tr. 1016-19, 1030, 1095).

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits.  20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428.  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed.  20 C.F.R. § 404.1520(a)(4).  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.  Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The claimant bears the burden of proof at steps one through four.  *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work

experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial

evidence.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986);

*Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A. Step Two Medically Determinable Impairment

Plaintiff contends the ALJ erred in concluding that Plaintiff did not have a

medically determinable impairment of post-traumatic stress disorder (PTSD).  Pl.

Brief at 9-11.  Plaintiff argues that the ALJ impermissibly substituted her lay

judgment for that of competent medical professionals.  Pl. Brief at 9-11.  In the

decision dated June 20, 2012, the ALJ reasoned:

> The claimant has the not medically determinable impairment of post-
> traumatic stress disorder.  The undersigned does not find that the
> existence of any trauma was established to justify a diagnosis of post-
> traumatic stress disorder. Furthermore, the undersigned does not find
> that the claimant has any mental health impairment that is separate
> from her drug dependence.

 (Tr. 17).  The ALJ mentioned PTSD a final time stating ". . . there is no indication

that the claimant's alleged . . . post-traumatic stress disorder . . . [has] caused more

than a minimal limitation in the claimant's ability to work."  (Tr. 23).

At step two of the five-step sequential inquiry, the ALJ must determine

whether the claimant has a medically severe impairment or combination of

impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  A physical or

mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only a claimant's lay statement of symptoms.  20 C.F.R. § 404.1508 (DIB); 20 C.F.R. § 416.908 (SSI).  Furthermore, a medically determinable impairment must be established by an acceptable medical source enumerated in 20 C.F.R. § 404.1513 (DIB) or 20 C.F.R. § 416.913 (SSI).

In order for the Court to determine whether the final decision is supported by substantial evidence, the ALJ is expected to provide a "clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  To that end, the ALJ must provide, "not only an expression of the evidence [that the ALJ] considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter v. Harris*, 642 F.2d 700, 706.  Absent a proper explanation, the Court cannot properly review the determination, since it would be unable to ascertain "if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705. For the Court to decide that the ALJ's decision at step two was supported by substantial evidence, it must find that the probative evidence that supported Plaintiff's claim was considered and properly rejected. *See Plummer v. Apfel*, 186 F.3d 422, 426 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may

choose whom to credit but cannot reject evidence for no reason or for the wrong reason.").

To determine whether the evidence of Plaintiff's PTSD was properly rejected, the Court must be able to identify the ALJ's reason for rejecting it. Because ALJs are required to "provide some explanation for a rejection of probative evidence which would suggest a contrary [determination]," a final decision cannot be upheld if it fails to acknowledge the existence of such contradictory evidence. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994).

Upon review, the Court notes that the record contains several acceptable medical sources demonstrating a diagnosis of Plaintiff's PTSD. For example, on December 6, 2007, Dr. Vaida detailed Plaintiff's medical and psychiatric history and symptoms, ultimately diagnosing Plaintiff with PTSD. (Tr. 654-656). On May 28, 2009, Dr. Sprohge reported Plaintiff's history, including events and signs that related to PTSD, found her to be a "generally reliable historian," and confirmed a diagnosis of PTSD. (Tr. 662-666). On July 15, 2009, Dr. Suminski concluded that Plaintiff had a medically determinable impairment of PTSD. (Tr. 688).

In a letter dated June 24, 2010, Plaintiff's treating psychiatrist, Dr. Razvan Vaida detailed that she had been treating Plaintiff for PTSD symptoms since December 06, 2007. (Tr. 1136). Dr. Vaida stated that Plaintiff's PTSD symptoms manifested in the form of panic attacks while driving, recurrent distressful thoughts about the accident due to anxiety, and avoiding reminders of her previous car accident. (Tr. 1136). Dr. Vaida opined that Plaintiff appeared to "fall under the category of people with chronic PTSD and she is likely to continue to struggle with PTSD symptoms for years to come." (Tr. 1136).

Nowhere in the decision does the ALJ offer any explanation for the rejection of the abovementioned evidence. No discussion of this evidence, or any evidence pertaining to PTSD, appears at step two of the assessment. None of these reports were referenced in step three of the evaluation. Similarly, no reference was made to this evidence during Plaintiff's RFC determination. Ultimately, without the ALJ even mentioning obviously probative evidence at any stage of the evaluation, the Court has no way of knowing whether it "was not credited or simply ignored," which makes a proper review of the record impossible. *See Cotter*, 642 F.2d at 705.

In this instance, not only did the ALJ fail to cite to any evidence supporting the ultimate finding that Plaintiff's alleged PTSD was not a medically determinable impairment, the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to reach the conclusion that Plaintiff did not experience any trauma sufficient to "justify a diagnosis of post-traumatic stress disorder." *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (The ALJ may not substitute his own judgment for that of a physician). The Court concludes that substantial evidence does not support the ALJ's conclusion that Plaintiff did not have a medically determinable impairment of PTSD.

## B. Step Two Severity of Impairments and RFC

Plaintiff contends that the ALJ erred by finding that Plaintiff's obesity, lumbar disc disease, and cervical disc disease where "non-severe" impairments. Pl. Brief at 6 (citing (Tr. 17)). Given the above analysis regarding PTSD and the ALJ's analysis of psychological impairments to include anxiety and depression, the Court also addresses the ALJ's account of Plaintiff's psychological impairments.

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.*, physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience. *See Bowen*, 482 U.S. at 149-51. The claimant has the burden of showing that an impairment is severe. *Id.* at 146 n. 5. Moreover, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited his or her ability to do basic work activities or impaired his or her capacity to cope with the mental demands of

working.  *See* 20 C.F.R. § § 404.1520(c), 404.1521(a); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).

If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two.  *See*, *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005). However, all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity.  20 C.F.R. §§ 404.1523 and 404.1545(a)(2); *see, e.g.*, *Shannon v. Astrue*, No. 4:11-CV-00289, 2012 WL 1205816, at *10-11 (M.D. Pa. Apr. 11, 2012); *Bell v. Colvin*, No. 3:12-CV-00634, 2013 WL 6835408, at *8 (M.D. Pa. Dec. 23, 2013).

Since the ALJ found Plaintiff's drug dependence to be a severe impairment, the Court must determine whether the ALJ properly accounted for Plaintiff's limitations resulting from obesity, lumbar disc disease and cervical disc disease, as well as Plaintiff's psychologically-based impairments.

### 1. Psychological impairments

In addition to the ALJ's aforementioned conclusion regarding Plaintiff's PTSD, for the psychological impairments of the RFC the ALJ continued:

> On May 28, 2009, Erik Sprohge, Ph.D., an examining psychologist, indicated that the claimant's affect is appropriate to the context. On July 1, 2011, the records from Wellspan Behavioral Health, a treating mental health provider, showed that the claimant felt that she could run a marathon. Additionally, on February 13, 2012, said records revealed that the claimant has no anger outbursts and that she does some cooking and shopping. Furthermore, there is no indication that the claimant's alleged . . . post-traumatic stress disorder and depression/anxiety from pain have caused more than a minimal limitation in the claimant's ability to work.

(Tr. 23). The ALJ placed great significance on: the May 28, 2009, observation of Dr. Sprohge that Plaintiff's affect was appropriate; another record dated July 1, 2011, wherein Plaintiff indicated that she could run a marathon; and a record dated February 13, 2012, that the claimant has no anger outbursts. (Tr. 23). Yet the ALJ failed to address the records regarding Plaintiff's repeat complaints of panic attacks, poor sleep, verbal and physical outbursts, mood swings, depression, and anxiety. *See e.g.*, (Tr. 631- 657). For example, in a record dated December 24, 2008, Plaintiff reported experiencing anxiety attacks four times a week and not driving as a result of the anxiety. (Tr. 634). In a progress note dated October 10,

2010, Plaintiff's treating psychiatrist opined that Plaintiff's prognosis was poor due to chronic pain which caused depression.  (Tr. 637).

The ALJ also fails to address Plaintiff's cognitive limitations.  In a record dated Dr. Vaida observed that Plaintiff had limited abstraction skills and poor short-term memory, detailing that her ability to recall after a few minutes required giving her three hints.   (Tr. 656).   While placing great significance on Dr. Sprohge's observations that Plaintiff's affect was appropriate, the ALJ does not address Dr. Sprohge's assessment that Plaintiff's abstraction was "fair"; she could perform a simple calculation, but could only name two of the last four presidents; Plaintiff could not do "serial seven subtractions" beyond 100 correctly; although she could repeat four digits going forward, she could only repeat two digits going backwards, and she interjects a new number when trying to complete the three digits backwards; based on her responses to hypotheticals Dr. Sproghe' concluded that Plaintiff's social judgment was "fair to poor"; and that Plaintiff had limited insight into her condition.  (Tr. 665-666).

An ALJ cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and

provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). The ALJ may properly accept some parts of the medical evidence and reject other parts, but must consider all the evidence and give some reason for discounting the rejected evidence. *See Adorno v. Shalala*, 40 F.3d 43, 48; *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 435 (3d Cir. 1999) ("[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence....") (citation omitted); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (reiterating standard forbidding the "cherry-picking" of the medical record).

The ALJ's failure to address probative evidence that supports Plaintiff's claim warrants a remand.

### 2. Physical impairments

In support of the conclusion that Plaintiff's obesity, lumbar disc disease and cervical disc disease were non-severe, the ALJ reasoned that:

> [Plaintiff's obesity, lumbar disc disease and cervical disc disease] have not caused more than a minimal limitation in the claimant's ability to work since June 21, 2008. Edward Garber, M.D, [sic] an examining surgeon, diagnosed the claimant as having obesity. On July

25, 2011, Bruce Sicilia, M.D., a treating physical medicine and rehabilitation specialist, noted that the claimant was 5'2" and 180 pounds. Moreover, Steven Triantafyllou, M.D., a treating orthopedic specialist, diagnosed the claimant as having lumbar disc disease and cervical disc disease. Dr. Triantafyllou stated that the claimant has neck pain and low back pain. Dr. Triantafyllou also stated that the claimant has muscle weakness and an abnormal gait. Nevertheless, Dr. Triantafyllou indicated that the claimant has only occasional leg pain. Despite her obesity, lumbar disc disease and cervical disc disease, the claimant noted that she has no problem with personal care. She further noted that she is able to fold laundry and help with dinner.

(Tr. 17). The ALJ's mere acknowledgement of Plaintiff's diagnoses of obesity, lumbar disc disease, and cervical disc disease followed by an observation that Plaintiff has occasional leg pain, has no problem with personal care, and is able to fold laundry and help with dinner, does not support the ALJ's conclusion that such impairments were non-severe.

The Third Circuit has repeatedly reaffirmed that activities of daily living which do not indicate transferable job skills for a regular and continuing basis cannot be used as substantive evidence of non-disability. *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity….It is well established that sporadic or transitory activity does not disprove

disability"); *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987); *Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001) ("Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity.") (internal citations omitted).[2]

Regarding opinion evidence for Plaintiff's physical impairments the ALJ stated:

> As for the opinion evidence, the undersigned assigns limited weight to the Physical Residual Functional Capacity Assessment of Hong Park, M.D. . . . Specifically, the undersigned assigns limited weight to Dr. Park's opinion that the claimant's lifting and/or carrying are limited to ten pounds. Said opinion is not supported by the record as a whole and is not consistent with the observations of Craig Fultz, M.D., an examining orthopedic surgeon, that the claimant denied any radicular symptoms. The undersigned assigns great weight to the Physical Residual Functional Capacity Assessment of Carla Huitt, M.D., a non-examining DDS physician. Specifically, the undersigned assigns great weight to Dr. Huitt's opinion that the claimant's lifting and/or carrying are limited to fifty pounds occasionally and twenty-five pounds frequently. Said opinion is supported by the record as a whole and is consistent with Dr. Fultz's observation that the claimant denied any radicular symptoms.

(Tr 23). The ALJ continued:

---

[2] Furthermore, section 404.1534(a) provides that, "[g]enerally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572.

Moreover, the undersigned assigns limited weight to the opinion of
Steven Triantafyllou, M.D., a treating orthopedic specialist, that the
claimant's lifting and carrying are limited to no more than ten pounds
and that the claimant is permanently disabled. Said opinion is not
supported by the record as a whole and is not consistent with Dr.
Fultz's observation that the claimant denied any radicular symptoms.
Additionally, said opinion concerns an issue that is reserved to the
Commissioner. The undersigned assigns limited weight to the opinion
of George O'Malley, Physical Therapist, an examining non-acceptable
medical source, that the claimant's lifting and carrying are limited to
ten pounds occasionally. Said opinion is not supported by the record
as a whole and is not consistent with Dr. Fultz's observation that the
claimant denied any radicular symptoms. The undersigned assigns
limited weight to Dr. Fultz's opinion that the claimant's lifting is
limited to less than twenty pounds. Said opinion is not supported by
the record as a whole and is not consistent with Dr. Fultz's observation
that the claimant denied any radicular symptoms.

(Tr. 24).

While the ALJ addressed medical opinions regarding Plaintiff's ability to
carry and lift, the ALJ did not cite any medical opinion to support findings
regarding Plaintiff's other physical limitations.  For example, in a treatment record
dated October 11, 2011, Dr. Triantafyllou noted that Plaintiff had significant
difficulty with prolonged standing or walking, and was on chronic pain
management.  (Tr. 1056).  In November 27, 2011, Dr. Triantafyllou reported a
poor prognosis with respect to Plaintiff's cervical and lumbar disc disease.  (Tr.
1032).  Dr. Triantafyllou noted that Plaintiff had a reduced range of motion in her

cervical and lumbar spine, an abnormal gait, tenderness, muscle spasms, and muscle weakness, and she experienced impaired sleep. (Tr. 1033). Dr. Triantafyllou opined that Plaintiff could stand and/or walk for less than two hours, and sit for about four hours, in an eight-hour workday. (Tr. 1034).

In February 2010, after nearly two years of consistent treatment, Dr. Sicilia still reported that Plaintiff had an antalgic gait, mild to moderate decrease in the range of motion of her cervical spine, severe decrease in the range of motion in all directions of her lumbosacral spine, and low back pain upon straight-leg raising. (Tr. 918, 1019). These objective findings, as well as the aforementioned diagnostic impressions, continued throughout the remainder of 2010 and 2011. (Tr. 1016-19, 1030, 1095).

The ALJ may properly accept some parts of the medical evidence and reject other parts, but must consider all the evidence and give some reason for discounting the rejected evidence. *See Adorno v. Shalala*, 40 F.3d 43, 48; *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 435 (3d Cir. 1999) ("[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence....") (citation omitted); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (reiterating standard

forbidding the "cherry-picking" of the medical record). An ALJ cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).

A residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding his activities of daily living, medical records, lay evidence, and evidence of pain. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121-22 (3d Cir. 2000). Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); 20 C.F.R. § 404.1545(a). "Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional

capabilities that supports the ALJ's conclusion must be invoked." *Biller v. Acting Comm'r of Soc. Sec.*, 962 F.Supp.2d 761, 779 (W.D. Pa. 2013) (citations omitted); *see also Gormont v. Astrue*, 2013 WL 791455, at *8 (M.D. Pa. 2013).

In this instance, the ALJ made a residual functional capacity determination without citing to assessments from a physician to support a finding regarding all of the functional abilities of the claimant. *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). The ALJ addressed only Plaintiff's ability to lift and carry without addressing medical opinions which quantified Plaintiff's limitations in walking, standing, turning, siting, and endurance. Without any medical opinion being credited with regards to all of Plaintiff's limitations, the Court finds that the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to reach the conclusion regarding Plaintiff's residual functional capacity. *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (The ALJ may not substitute his own judgment for that of a physician).

Given that substantial evidence does not support the ALJ's characterization of Plaintiff's limitations for determining the RFC, it cannot be said that the ALJ's

step two findings were harmless error.   Based on the foregoing, the Court concludes that the substantial evidence does not support the ALJ's findings regarding the severity and characterization of Plaintiff's impairments due to obesity, lumbar disc disease, and cervical disc disease.

### C.      ALJ's Drug Addiction and Alcoholism ("DAA") Analysis

Plaintiff contends that the ALJ failed to conduct a proper DAA analysis.  (Pl. Brief at 11-13).  An individual cannot be considered to be disabled if drug abuse or alcoholism is "material" to that consideration.   42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a).   The SSA has published policy interpretation rulings, the latest version of which is SSR 13–2p, 78 Fed.Reg. 11939 (Feb. 20, 2013), setting forth the process to be followed in conducting a DAA materiality inquiry.[3] Further, the SSA has provided guidance on the considerations for a DAA materiality inquiry through its Program Operations Manual System.   *See* POMS § 90070.050.

---

[3] Social Security Ruling 13–2p was published on February 20, 2013 and, thus, came into effect after the ALJ's decision in this case was issued.   Prior to the publication of SSR 13–2p, the principles discussed herein were substantially set forth in a prior policy interpretation ruling, SSR 82–60, as well as a "teletype" issued by the Commissioner, Emergency Message EM–96200.   SSR 13–2p superseded both SSR 82–60 and EM–96200.   For clarity, the Court refers to SSR 13–2p in this Report and Recommendation; however, it should be recognized that the ALJ did not have the benefit of that ruling when making her decision.

Section 416.935, SSR 13–2p, and POMS 90070.050 set forth the applicable process for an adjudicator to determine whether DAA is a material contributing factor to a claimant's disability.   First, the ALJ must decide if the claimant is disabled, following the general disability case development and evaluation procedures and considering the effects of DAA. POMS § 90070.050(B)(1). Second, the ALJ must decide if there is "medical evidence of DAA."   POMS § 90070.050(B)(2).   Finally, if there is medical evidence of DAA, the ALJ must re-evaluate the claimant as if the claimant had stopped using drugs and alcohol, and on that basis decide whether the DAA is a contributing factor material to the disability.   POMS § 90070.050(B)(3), (D); 20 C.F.R. § 416.935(b)(2); SSR 13–2p, 78 Fed.Reg. at 11941–42.

Stated differently, a DAA materiality determination is made only when "the claimant is disabled considering all impairments" and the ALJ has "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder."  SSR 13–2p, 78 Fed.Reg. at 11941.

"Medical evidence of DAA" is a specifically defined term for purposes of the Social Security Act.    SSR 13–2p, 78 Fed.Reg. at 11944; POMS § 90070.050(C)(1)(a).  It means that the evidence is from "an acceptable medical

source" and "[i]s sufficient and appropriate to establish that the individual has a medically determinable substance use disorder." POMS § 22505.003(B)(1); POMS § 90070.050(C)(1)(a). "[A] claimant has DAA only if he or she has a medically determinable Substance Use Disorder" as defined in *Diagnostic and Statistical Manual of Mental Disorders* (or "DSM"). SR 13–2p, 78 Fed.Reg. at 11941. "In general, the DSM defines Substance Use Disorders as maladaptive patterns of substance use that lead to clinically significant impairment or distress." *Id.* at 11940 (footnote omitted) (citing *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000) ("DSM–IV–TR")). As explained further by the SSA:

 (i) As for any medically determinable impairment, we must have objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has DAA. This requirement can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant. The acceptable medical source may also consider any records or other information (for example, from a third party) he or she has available, but we must still have the source's own clinical or laboratory findings.

(ii) Evidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder.... In addition, even when we have objective medical evidence, we must also have evidence that establishes a maladaptive pattern of substance use and the other requirements for diagnosis of a Substance Use Disorder(s) in the DSM. This evidence must come from an acceptable medical source.

SSR 13–2p; 78 Fed.Reg. at 11944.  In the decision dated June 20, 2012, the ALJ

reasoned:

> Assuming that the claimant did not stop the substance use, the undersigned assigns limited weight to the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of Michael Suminski, Ph.D., a non-examining DDS psychologist. . . . . However, assuming that the claimant stopped the substance use, the undersigned assigns great weight to the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of Mark Hite, Ed.D., a non-examining DDS  psychologist.

(Tr. 23-24).  The ALJ further noted:

> Assuming that the claimant did not stop the substance use, the undersigned assigns great weight to the opinion of John Tardibuono, D.Ed., an examining psychologist, that the claimant had a GAF score of 48 on May 5, 2010. . . .
>
> In sum, the above residual functional capacity assessment is supported by the claimant's drug dependence, obesity, lumbar disc disease and cervical disc disease.

(Tr. 24) (internal citation omitted).  Throughout the decision, the ALJ inexplicably

assumed periods of when Plaintiff had relapses in the alleged substance abuse and

continued substance abuse.  The ALJ also independently concluded what portions

of Plaintiff's symptoms and impairments were caused by the alleged substance

abuse.

The ALJ failed to identify evidence to support periods of substance abuse and sobriety and failed to correlate periods of substance abuse and sobriety with any periods of improvement or deterioration in symptoms.   With no medical records showing when Plaintiff was or was not sober, there is no logical way to determine that Plaintiff improved when not abusing substances.   Where the effects of a claimant's underlying impairments cannot be separated from the effects of his or her substance abuse, a finding of materiality is not warranted.   *See Salazar v. Barnhart*, 468 F.3d 615, 622-25 (10th Cir.2006); *accord Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 431-32 (W.D. Pa. 2010).   Since the ALJ decision failed to address any probative evidence or expert opinion that Plaintiff's impairments were in any way caused by or interrelated with her substance abuse, there is no substantial evidence to support the determination that Plaintiff would not still be disabled if the substance abuse were to stop.   *See* 20 C.F.R. § § 404.1535, 416.935. Therefore, the ALJ's decision is not supported by substantial evidence.

///

///

///

## IV.   Recommendation

Accordingly, it is HEREBY RECOMMENDED:

1.   The decision of the Commissioner of Social Security denying Plaintiff's social security disability insurance be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence in accordance with the Court's above report; and

2.   The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.

A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making

his or her own determination on the basis of that record.  The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: February 20, 2015

s/Gerald B. Cohn

GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE